286 So.2d 788 (1973)
James V. MILLER
v.
BOARD OF TRUSTEES OF the POLICE PENSION FUND OF the CITY OF NEW ORLEANS.
No. 5918.
Court of Appeal of Louisiana, Fourth Circuit.
November 30, 1973.
Rehearing Denied January 8, 1974.
Writ Refused March 8, 1974.
G. Patrick Hand, Jr., Dennis J. Waldron, Hand & Olsen, New Orleans, for plaintiff-appellee.
Richard A. Dowling, New Orleans, for defendant-appellant.
Before REDMANN, LEMMON and SCHOTT, JJ.
REDMANN, Judge.
A pension fund appeals from a district court judgment decreeing plaintiff, a former police officer, entitled to disability payments under R.S. 33:2292.[1]

Facts
Having earlier been (at least informally) denied disability retirement, plaintiff resigned from the police department July 20, 1970, citing a job offer "which has many benefits I cannot pass up". He had injured his back in January 1969 when his police car swerved to avoid collision and ran over a curb. His underlying condition was the congenital one of spondylolisthesis.
*789 The present symptoms were evaluated by two orthopedic surgeons as a 10% back dysfunction or disability. A third orthopedic surgeon described only "mild limitation of motion to forward bending of the back * * * questionable motor loss of the [right] extensor hallis [sic; hallucis?] longus muscle * * * [and] loss of sensation of the fifth lumbar dermatome" and, concluding plaintiff "has at this time evidence of nerve root irritation", stated his "impression * * * [plaintiff] should be looked upon favorably for being retired". (Emphasis added.)
A general surgeon recited that plaintiff had "reached a period where prolonged standing, walking, or sitting results in pain"; he gave as his "opinion" that plaintiff's request for "disability pension should be given every consideration."
Of the two orthopedic surgeons who described his problem as a 10% dysfunction or disability of his back, one opined only "I do not think he is capable of doing police work at this time, which would require * * * lifting or pushing, or prolonged standing". (Emphasis added.) The other felt plaintiff was "certainly able to perform the clerical tasks required of a detective in the Personnel Division [plaintiff's assignment] without undue suffering. Although there is a chance of re-injury of his back with recurrent symptoms with a new accident, this chance is not great and if a re-injury were to occur, conservative care could likely bring his symptoms under control again."
We conclude plaintiff has a partial disability, reasonably shown to be service-connected, amounting to a 10% back dysfunction, which disability did not make him unable to do the work of a police officer and in fact did not cause his retirement.

Law
The New Orleans police pension fund was enacted in its present form by Acts 1948, No. 96 (and among subsequent amendments that by Acts 1967, No. 69 is pertinent), to provide for the pensioning and retirement of police employees. It does not purport to be a second workmen's compensation law: R.S. 23:1034 (as amended by Acts 1950, No. 412) makes the general workmen's compensation law applicable to police officers.
That a police officer may be totally and permanently disabled within the workmen's compensation law's meaning is, however, not material to the question whether the officer is entitled to pension fund law disability benefits. The two laws and sources of funds are distinct. All police officers contribute a portion of their salaries to their pension fund.
R.S. 33:2298 demands that "No benefits, pensions, annuities, or refunds shall ever be made from the fund for any reason whatsoever, except in strict conformity with the provisions and requirements of this Sub-part. Any person who separates from the police department for any cause prior to retirement, shall have no claim to the benefits, pensions, or annuities provided herein, nor to refunds of any amounts paid into the fund. This provision shall be retroactive."[2]
We therefore reject any theory that pension fund disability should be coextensive with the obligatorily liberal interpretation of workmen's compensation disability. But by similar reasoning we also reject appellant's contention that plaintiff's having received total and permanent disability workmen's compensation benefits defeats (on exclusiveness of remedy *790 grounds, R.S. 23:1032) entitlement to pension benefits.
We conclude that the present New Orleans police pension found law's structure provides (1) for a disability "pension" for permanent disability which renders retirement necessary, whether the disability is service-connected, R.S. 33:2292, or not, R. S. 33:2294 subd. E; and (2) for disability "benefits" for temporary disability which renders removal from active service necessary, whether the disability is service-connected or not, except that if not the member must have ten years service, R.S. 33:2294 subd. F.
Prior to the 1967 amendment the pension fund's only provision for disability retirement was R.S. 33:2292. It provides that when an officer "while in the active discharge of duty, becomes permanently disabled so as to render his retirement from service necessary, he shall be retired by a two-thirds vote of the members of the board" and shall receive a pension. (Emphasis added.) We conclude that plaintiff has not shown that his disability (though permanent) "render[ed] his retirement from service necessary" and the board therefore was not obliged by § 2292 to retire him and grant him a pension.
The 1967 amendment did not purport to amend § 2292, but it did make further provisions for disability benefits in R.S. 33:2294 subds. E and F.[3]
Subd. E governs the case of an officer "permanently disabled and incapacitated to perform his duties" by a non-service-connected injury or illness. (Emphasis added.) It repeats the mechanics of the board (though by majority vote) retiring and pensioning the disabled officer. Evidently *791 the italicized words relate the permanent disability not to bodily function but to police officer function and, while the incapacity doubtless need not be 100%, some significant incapacity such as might disqualify a police officer from holding his job is required.
Subd. F's first sentence, relating exclusively to service-connected disability (as here present), does not repeat subd. E's dual qualification of "disabled", i. e., permanently disabled to perform his duties.[4] And nowhere in subd. F is there mention of retirement. But subd. F's second paragraph plainly indicates that the disability must have caused removal from active duty since, if disability is removed the member "shall be required to return to active duty and his disability payments shall cease."
We view subd. F as providing for the member whose disability (e. g., a broken leg) is only temporary but so substantial as to prevent his remaining on active duty (presumably, for a period longer than ordinary sick leave might cover). Subd. F provides not a "pension" on retirement (as do subd. E and § 2292), but a "disability benefit" without retirement to the member temporarily disabled from active duty.
We therefore conclude that, since plaintiff's disability was insufficient to require his removal from active duty, he was also not entitled to disability benefits under R. S. 33:2294 subd. F.
Fortunately an officer in plaintiff's position is entitled to the liberally-construed workmen's compensation law benefits, for which the city alone pays. But, where his disability does not force retirement or removal from active duty, he is not entitled to the strictly-construed pension law benefits, for which his fellow officers pay in part.
The judgment of the district court is reversed and the determination of the Board of Trustees of the Police Pension Fund in the City of New Orleans is reinstated.
Reversed.
NOTES
[1] The district court purported to act under R.S. 49:964. We do not decide whether the "board of trustees of the police pension fund in the City of New Orleans", R.S. 33:2282, is governed by R.S. 49:951 et seq., which governs an "agency", defined by § 951 (2) as "each state board" (our emphasis) with rule, decision or order making power (with exceptions). In any case the city board is not exempt from judicial review of its determinations; La.Const. art. 1 § 6.
[2] Plaintiff perhaps could be dismissed as one "separate[d] * * * prior to retirement" and therefore unentitled, § 2298. He applied for but was denied disability retirement and thereafter resigned and then renewed his application. If he were previously entitled under the law to retire on a disability pension, the board's refusal to approve his retirement should not oblige him to continue to work as a police officer or resign at the cost of losing his pension.
[3] "E. If any member of the police department shall become physically or mentally permanently disabled and incapacitated to perform his duties and such disability is not the direct result of a service incurred injury or illness, then, in that event, the board of trustees, by a majority vote of its members, shall determine whether or not such member shall be retired for disability. Provided, that the procedure to establish such disability and to determine the continuance thereof shall be the same as that prescribed in Paragraph F of this Part. The amount of the pension to be received by any member retired in accordance with the provisions of this section shall be based on the following schedule:

"(1) If the disabled member has performed faithful service in the police department for a period of ten years or less, he shall receive a pension in the amount of thirty percent of his average salary during the last year of service immediately preceding the date of establishing his disability in accordance with the provisions of this section.
"(2) If the disabled member has performed faithful service in the police department for a period of more than ten years, but not more than fifteen years, he shall receive a pension in the amount of forty percent of his average salary during the last year of service immediately preceding the date of establishing his disability in accordance with the provisions of this section.
"(3) If the disabled member has performed faithful service in the police department for a period of more than fifteen years, he shall receive a pension in the amount of fifty percent of his average salary during the last year of service immediately preceding the date of establishing his disability in accordance with the provisions of this section.
"F. Should any member become disabled from injury incurred in the scope of employment and while in service he shall be paid a disability benefit to be determined by the board based on the extent of his disability but not to exceed fifty percent of his salary at the time he becomes disabled. Should such member become disabled from any cause, whether service connected or not, after ten years of creditable service he shall be entitled to a disability benefit to be determined by the board, based on the extent of his disability, but not to exceed fifty percent of his average annual salary for his highest five consecutive years, provided that monies received as overtime pay (whether voluntary or involuntary), court time pay and holiday pay shall not be considered as salary for the purposes of this act.
"The board shall require annual medical examination of disabled members and should the board determine that any member has recovered from his disability he shall be required to return to active duty and his disability payments shall cease."
[4] Nor is this qualification found in the second sentence of subd. F, providing benefits for non-service-connected disability for members with ten years of service.