GROVER L. COVINGTON, Chief Judge.
This is an appeal by Judy Searcy, appellant, from an order of the Louisiana Civil Service Commission upholding the appointing authority’s dismissal of Ms. Searcy.
Appellant, a Correctional Security Officer II serving with permanent status at Louisiana State Penitentiary, was suspended for ninety (90) days pending the outcome of interdepartmental disciplinary hearings relative to the charge of sleeping on duty on May 6, 1982. This matter was appealed to the Civil Service Commission and docketed as Number 3316. After appellant appealed this matter to the Civil Service Commission, no departmental hearing was held and termination was imposed by the appointing authority. Appellant subsequently filed a timely appeal of termination to the Civil Service Commission, which appeal was' docketed as Number 3349. Since these two cases arose from the same cause of action, they were consolidated.
A public hearing in this matter was held before a Civil Service Referee appointed by the Commission on October 22, 1982, following which a Referee’s decision was rendered January 28, 1983. The Referee’s decision had the effect of overruling the appointing authority, finding that the appointing authority failed to prove that appellant was sleeping on duty. The Referee found the appellant’s testimony to be credible and that she either fainted or became unconscious due to medication. The Referee found, however, appellant’s conduct in reporting to work under the influence of medication on May 6, 1982, resulted in her inability to perform her duties and this created a security risk at the institution, which inability to properly function provided legal cause for the imposition of a disciplinary action. The Referee concluded that a 90-day suspension was all that was justified, and ordered appellant to be reinstated to her former position with all appropriate emoluments of her job to be restored.
The appointing authority requested that the Commission review the decision of the Referee on the issue of whether the appointing authority had failed to prove the appellant was sleeping on duty. The appointing authority in its application for review to the Commission pointed out that the Referee’s opinion failed to consider the Finding of Fact as follows:
*775 a. An inmate of the prison informed Captain Holliday that the guard in Tower 2 looked sick.
b. Captain Holliday then observed Appellant sitting in a chair with her eyes closed and her head back for approximately one minute.
c. He then observed her head fall forward.
d. He observed her in this position for a few minutes, at which time she began to raise her head and open her eyes.
Additionally, the appointing authority argued to the Commission, that the finding of fact of the Referee’s decision supported termination because the Referee found that the appellant’s reporting for duty while under the influence of medication which impaired her ability to perform her duties created a security risk for the institution. Significantly, the Referee concluded that the appellant was unaware of the two security officers who testified that they observed her sleeping.
On July 22, 1983, the Commission granted the Application for Review filed by the appointing authority.
The Commission, upon review and by opinion dated April 9, 1984, reversed the Referee, based on the finding of fact by the Referee, and the testimony of witnesses who were officers with personal knowledge of the incident. The Commission held that it did not accept the conclusion of the Referee that the appointing authority failed to prove the appellant was sleeping on duty. The Commission also stated that the emphasis placed by the Referee on fainting rather than sleeping did not merit any detectable difference in the jeopardy to the institution and the State service sufficient to decrease the disciplinary action which should have been taken against the appellant.
This Court, in reviewing the fact-findings and conclusions of law of the Commission must apply the following applicable law:
The standards of appellate review of findings of fact in Civil Service Commission eases necessarily must be the same as those which exist with regard to cases arising in the trial courts. The reviewing court should not disturb the factual findings of the trier of fact in the absence of manifest error. Arnold v. New Orleans Police Department, 383 So.2d 810 (La.App. 4th Cir.1980), writ denied, 385 So.2d 274 (La.1980); Herbert v. Department of Police, 362 So.2d 1190 (La.App. 4th Cir.1978).
While a person who has gained permanent status in the classified state service may be subjected to disciplinary action, such as dismissal, if the conduct complained of by the appointing authority impairs the efficiency of the public service and bears a real and substantial relation to the efficient and orderly operation of the public service in which the employee is engaged, Leggett v. Northwestern State College, 242 La. 972, 140 So.2d 5 (1962), the burden of proving that the action taken against the disciplined employee was proper and warranted falls on the appointing authority. Shelfo v. LHHRA, Pinecrest State School, 361 So.2d 1268 (La.App. 1st Cir., 1978), writ denied, 364 So.2d 122 (La.1978); Stiles v. Department of Public Safety, Drivers’ License Division, 361 So.2d 267 (La.App. 1st Cir., 1978); see also La. Const.1974, Art. 10 Section 8.
Department of Public Safety v. Rigby, 401 So.2d 1017, 1018 (La.App. 1st Cir. 1981) writ denied, 406 So.2d 626 (La.1981).
The Commission correctly focused on the most serious implication of appellant’s actions in this case. Namely, that a lapse on the part of an officer posted in the guard tower which is located on the ground creates the most serious type of risk to the institution because such a lapse gives an inmate an opportunity to secure a loaded rifle. An inmate who observes a sleeping tower guard has easy access to the loaded rifle in possession of the tower guard. In fact, in this case, an inmate reported appellant’s sickly appearance to Captain Leroy Holliday. A more aggressive inmate could have taken advantage of the situation with more tragic consequences. The Commis *776 sion reviewed testimony against appellant’s interest whereby Captain Holliday testified that appellant admitted after the incident occurred that she must have been asleep. , Also, the appellant admitted that she had just dozed off, when discussing the incident with Lieutenant Colonel Landry Mayeaux. Further, the appellant made no disclosure to either Captain Holliday or Lt. Col. May-eaux regarding her alleged medical problem.
The Commission correctly found that appellant jeopardized her position by failing to follow institutional rules requiring officers to inform their supervisor of the medication they ingest and the effects of such medication. It was appellant’s duty to learn the effects of medication she ingested and not the obligation of the institution. She was thus derelict in her duty.
The Commission’s findings in the instant case are consistent with this Court’s decision in Dent v. Department of Corrections, 413 So.2d 920 (La.App. 1st Cir.1982). In Dent, a security officer was observed by other employees for three to four minutes to be “apparently sleeping.” This finding of fact was sufficient to carry the appointing authority’s burden of proof that the employee was sleeping.
In reporting to duty under the influence of medication, resulting in her inability to perform her duties, appellant created a security risk at the institution. A similar set of circumstances occurred in Dent. This Court found that:
“... the conclusion that Ms. Dent was asleep is amply supported by credible evidence. Even if Ms. Dent had not been asleep, she was so inattentive as to be unaware of the entry of her supervisor into the room. (Emphasis added). Her job was to maintain an alert surveillance of prisoner movements and her failure to do so could seriously have endangered her life, the lives of her fellow workers, and the lives of prisoners. Her inattentiveness was ample cause for dismissal.” 413 So.2d at 922.
In Dent, the appellant failed to notice her supervisor come into the room. In the instant case it is established that appellant was not aware of the two security officers approaching her tower and observing her or the inmate who reported her condition to Captain Holliday.
The tower in question was a ground tower, which is situated at ground level with windows on the front and sides. If appellant had been awake, there is no reason why she would not have seen the two officers and the inmate approach.
We find that Ms. Searcy’s sleeping on duty is amply supported by credible evidence. Moreover, in accordance with the Dent case, appellant’s inattentiveness to her duty is sufficient cause for termination. The record reveals that the appellant’s “apparent sleeping” was reported to the Captain by an inmate of the prison, and that appellant’s duty post was in the Reception Center area of the prison, where primarily maximum security prisoners are housed. Hence, we find that her “inattentiveness” in this area of duty is more serious and aggravating than the situation in Dent, and is sufficient cause for termination.
After a thorough review and evaluation of the record, we are convinced that the evidence supports the findings of fact and opinion expressed by the Commission.
Accordingly, we affirm the Commission’s order of dismissal of the appellant, which upholds the dismissal that was originally imposed on the appellant by the appointing authority. The appellant is cast for costs.
AFFIRMED.