SCHOTT, Judge.
Appellant was dismissed from the Civil Service of New Orleans for violating the City’s policy requiring its employees to reside in New Orleans. This appeal is from the decision of the Civil Service Commission of New Orleans upholding the dismissal.
Appellant was employed by the City Planning Commission in 1976. She was living in Marrero, Jefferson Parish, and disclosed this on her application. A policy memorandum issued by the Chief Administrative Officer in September 1973 required a non resident probationary employee to move to New Orleans before the probationary period expired and stated that failure to comply would constitute grounds for termination. In March, 1985, Robert W. Becker, the Executive Director of the City Planning Commission and appellant’s appointing authority, learned that two employees, appellant and another, were using the same New Orleans address but had different telephone numbers on their personnel records. An investigation disclosed that appellant was in fact residing in Marrero and not at the New Orleans address. On August 2,1985 Becker suspended appellant for one week and gave her until May 1, 1986 to relocate to New Orleans or be terminated. On April 30, 1986 she was dismissed from the service for failing to comply.
In this court, appellant contends that the appointing authority failed to establish legal cause for her termination because the termination notice she received accused her of violating a policy memorandum but cited no Civil Service Rule she had violated. The termination notice clearly gave her notice as to facts upon which her termination was based. This enabled her to take a meaningful appeal to the Commission. In turn, the Commission found that her conduct constituted a violation of Rule IX of the City Civil Service Rules which authorizes the appointing authority to take appropriate action when an employee had committed “any act to the prejudice of the service.” We agree with the Commission that appellant’s stubborn refusal to obey the policy memorandum was prejudicial to the service and authorized the appointing authority to dismiss her.
Next, appellant argues that she was not aware of the Policy Memorandum of 1973 until 1985 when she was suspended. However, in her testimony she admitted that she knew about the requirement when she *1206 was employed but followed the advice of some co-workers who told her she “didn’t have to bother moving, if [she] had a friend or relative over here, just use their address.”
Finally, appellant contends that her conduct did not impair the efficient operation of her public service such as to warrant her dismissal. She relies on Daniel v. Department of Police, 426 So.2d 282 (La.App. 4th Cir.1983) and White v. City of Winnfield Fire Department, 384 So.2d 471 (La.App. 2nd Cir.1980). Both cases are distinguishable.
In Daniel we know only that the appellant was disciplined for “a change of residency without permission from Orleans Parish to St. Bernard Parish” along with “other minor violations”; whereas, in the instant case appellant knew when she was employed that she was required to move to New Orleans and she deliberately violated the policy. She falsified her records to avoid obeying the policy, and even, when finally caught and given a fair chance to relocate without forfeiting her job, she chose to defy the appointing authority and the City.
In White the question was whether the appellant was in violation of the Fire and Police Civil Service Law for Small Municipalities (LSA R.S. 33:2531-2568) by failing to relocate. In the present case we are concerned not with a small municipality but with the City of New Orleans and with the interpretation of a Civil Service rule which deals with acts which are prejudicial to the service. The Policy Memorandum in question was promulgated after the City Council adopted Ordinance 5240 in August, 1973 requiring all city employees to reside in New Orleans. We must presume that there were good reasons for the City to make the decision, and we can conceive of many. It cannot be gainsaid that a single employee’s decision not only to ignore the policy, but also to pursue a course of conduct aimed at covering up her disobedience by falsifying reports over many years and to defy her appointing authority by refusing to relocate when given a chance to do so does not operate to the prejudice of the civil service. Condoning such flagrant conduct would destroy order and discipline in the system.
Accordingly, the decision of the Civil Service Commission is affirmed.
AFFIRMED.